UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

VANDAIRE KNOX,

V.

WEXFORD HEALTH SOURCES, INC.,

JENNIFER MEEKER,

O. GOMEZ

TERI HICOK,

TRACY BORDNER,

Illinois River Correctional Center

NURSING STAFF (NAMES UNKNOWN)

DR. TATE

COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983

U.S. CODE (STATE OF ILLINOIS)

I. Plaintiff:

    A. Name: Vandaire Knox

    B. List all aliases: None

    C. Prisoner identification number: B42692

    D. Place of present confinement: Illinois River Correctional Center

    E. Address: 1300 W. Locust, P.O. Box 999; Canton, Illinois 61520

II. Defendants:

    A. Defendant: Wexford Health Sources, Inc.,

        Title: Health Care Provider

        Place of Employment:

    B. Defendant: Tiffanie Clark, former Acting Warden of Illinois River C.C.

        Title: Warden of Illinois River Correctional Center

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

    C. Defendant: Jennifer Meeker

        Title: Illinois River C.C. Health Care Administrator

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

    D. Defendant: Nurse Practioner, Gomez, First Name Unknown

        Title: Nurse Practioner, Illinois River C.C.

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

    E. Defendant: Teri Hicok

        Title: Nurse Practioner, Illinois River C.C.

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

    F. Defendant: Tracy Bordner

        Title: Assistant Warden, Illinois River C.C.

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

    G. Defendant: Nursing Staff, Names Unknown, Multiple Nurses over course of

        arrival at Illinois River C.C. on November 2, 2021 until present date.

        Title: Nursing Staff of Illinois River Correctional Center

        Place of Employment: 1300 W. Locust, P.O. Box 999, Canton, Illinois 61520

H. Defendant: Dr. Tate

   Title: Physician, Employed by Wexford Health Sources Inc.

   Place of Employment: Illinois River C.C. 1300 W. Locust, P.O. Box 999,

   Canton, IL. 61520

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Knox v. Butler 17-92-DRH

B.    Approximate date of filing lawsuit: February 6, 2017

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: VanDaire Knox

D.    List all defendants: Kimberly Butler, Cameron Watson, Major Hassameyer, Sgt. Pelker, I.D.O.C.

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Federal Court Southern District of Illinois

F.    Name of judge to whom case was assigned: District Judge Herndon

G.    Basic claim made: Deprivated Plaintiff from persistent and severe pain in his left Knee. And defendants confiscated Plaintiff Knee brace and did not honor his low bunk/low gallery permits.

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Settled

I.    Approximate date of disposition: Don't Know

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(4.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Knox V. Moteci, et al.
10 cv 881 and 10 cv 2117

B.    Approximate date of filing lawsuit: August 22, 2011

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: VanDaire
Knox

D.    List all defendants: Superintendent Moreci, Thomas Dart,
Salvador Godinez, Officer Lombardi and Cook County

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District of Illinois

F.    Name of judge to whom case was assigned: Judge Robert W. Gettleman,
Magistrate Judge Martin C. Ashman

G.    Basic claim made: numerous inhumane conditions at
Cook County Jail

H.    Disposition of this case (for example:  Was the case dismissed?  Was it appealed?  Is it still pending?): Settled

I.    Approximate date of disposition: April 29, 2012

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT.  REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(5)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Knox v Shearing 14cv-193-SCW

B.    Approximate date of filing lawsuit: February 14, 2014

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: VanDaire Knox

D.    List all defendants: Shearing, Dallin, L. Ladd, and N. Vsabasi

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Southern District of Illinois

F.    Name of judge to whom case was assigned: Magistrate Judge Williams

G.    Basic claim made: Deliberate Indifference claim for failing to provide or renew plaintiff's pain medication and/or continuing him on medication know to be ineffective and/or cause harmful side effects.

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Settled

I.    Approximate date of disposition: Don't Know

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(b.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: Michael Parish, et al. v. Sheriff of Cook County and Cook County, Illinois  07-cv-4369

B. Approximate date of filing lawsuit: August 3, 2005

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: All Cook County detainees who entered the Cook County Jail, from August 3, 2005 thru August 31, 2013

D. List all defendants: Sheriff of Cook County and Cook County, Illinois

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District of Illinois

F. Name of judge to whom case was assigned: Judge, Lee

G. Basic claim made: Who were taking prescription medication for a serious health need and who were not provided with appropriate medication with 24 hours thereafter

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Settled

I. Approximate date of disposition: May 8, 2020

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(3.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Knox v. Simms (case no dont Know.

B.    Approximate date of filing lawsuit: Don't Know

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: VanDeita Knox

D.    List all defendants: Simms

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District of Illinois

F.    Name of judge to whom case was assigned: dont Know

G.    Basic claim made: don't Know

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): dismissed

I.    Approximate date of disposition: don't Know

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

## INTRODUCTION

A. Factual Allegations:

1.   Plaintiff, Vandaire Knox was transferred from Lawrence Correctional Center, in Sumner, Illinois, to Illinois River Correctional Center in Canton Illinois on November 2, 2021.

2. While incarcerated at Illinois River C.C. Plaintiff has suffered many instances where he received his seizure medications at inconsistent times of the day, which directly effects the efficiency of the medication.(See Time Table)

3. While incarcerated at Illinois River C.C. Plaintiff has suffered many instances where he did not receive his seizure medications in part, and in full, which directly effects the efficiency of the medications, and made Plaintiff more susceptible to suffer seizures. (See Time Table)

4. Plaintiff informed all defendants of the fact that he was not receiving his seizure medications in a timely manner. (See Exs. A,C,D,E,F,G,H,I,J)B)

5. Plaintiff filed multiple grievances about failure to receive his seizure medications, the seizures caused by the failure, and the physical injury to Plaintiff's wrist, and defendants deliberate indifference to his serious medical needs. (See Exs. B,K,L,M,N)O,P)

6. Plaintiff visited Defendant O. Gomez at sick call within the cell house. Plaintiff explained that he was not receiving his seizure medications at the proper time, and at other times not recieving the full amounts, or any at all. Defendant O. Gomez told Plaintiff that he would look into raising his seizure medications, and ensure that Plaintiff would receive his medications on time, and that refills of medications would be made to ensure that there wouldn't be any gaps in administering the medications.

7. Plaintiff wrote to and was visited by defendant T. Hicok about not receiving his seizure medications in a timely manner, and at other times not receiving the full amounts, or any at all. Plaintiff also informed her that he had been suffering seizures due to not receiving his medication as prescribed. Defendant T. Hicok never addressed the administration of Plaintiff's seizure medications, and raised his dosage of one of his medications on October 7, 2022.

8. Plaintiff wrote to Warden Tiffine Clark on two occassions (See Exs.Q,H)B) informing her that Plaintiff had not been receiving his seizure medications

and having seizures..

9. Plaintiff wrote Assistant Warden Tracy Bordner on two occassions (see Exs. D,G) informing him that Plaintiff had not been receiving his seizure medications, and been suffering seizures.

10. Plaintiff wrote to Illinois River Health Care Administrator Jennifer Meeker (See Exs. E,F) informing her that Plaintiff had not been receiving his seizure medications in a timely manner, and sometimes not at all. That his medications were not being refilled before expiring, causing him to go without his seizure medications for extended periods of time.

11. Plaintiff was examined by Dr. Ottney to assess the injury to his wrist suffered during a seizure on June 4, 2022. The appointment occurred on on July 29, 2022. Dr. Ottney scheduled an appointment with an outside specialist to examine his injured wrist.

12. Defendant Dr. Tate canceled Plaintiff's appointment with an outside specialist, and placed Plaintiff on a carpel tunnel treatment plan, while having full knowledge that Plaintiff's injury was suffered during a fall from his elevated bunk bed.

TIME LINE

13. Plaintiff arrived at Illinois River C.C. from Lawrence C.C. on November 2, 2021.

14. That during the first three weeks of arriving at Illinois River Plaintiff's dosage of seizure medications were changed without being seen by a physician or nurse practioner.

15. That during the first three weeks of arriving at Illinois River Plaintiff's medications would be brought at inconsistent times by the nurses, at times they wouldn't have all of the medications, or partial doses.

16. On November 18, 2021 Plaintiff suffered a seizure after receiving his seizure medications at inconsistent times, and doses for a three week period.

17. Plaintiff's November 18, 2021 seizure was witnessed by his cellmate Joseph Yntema. (See Ex. I)

18. On November 29, 2021 Plaintiff received his medications at 12:47 a.m. from an unknown nurse. Medication is normally administered between 6:00 p.m. and 8:00 p.m..

19. On November 30, 2021 Plaintiff received his medications at 10:41 p.m. from an unknown nurse.

20. On December 1, 2021 Plaintiff received his medications at 8:32 p.m. from

an  an unknown nurse.

21. On December 2, 2021 Plaintiff received his medications at 8:40 p.m. from an unknown nurse.

22. On December 3, 2021 Plaintiff received his medications at 9:40 p.m. from an unknown nurse. Did not receive his prescription of Gabpantin.

23. On December 4, 2021 Plaintiff received his medications at 11:17 p.m.

24. from an unknown nurse.

25. On December 5, 2021 Plaintiff received his medications at 1:08 am from an unknown nurse. Did not receive his prescription of Klonopin until 7:35 a.m. of December 6, 2021. Nurse unknown.

26. On December 7, 2021 at 12:10 a.m. Plaintiff received his medications from December 6, 2021.

27. On December 7, 2021 Plaintiff received his medications at 7:35 p.m. from an unknown nurse. Did not receive prescription Klonopin.

28. On December 8, 2021 Plaintiff received his medications at 7:25 p.m. from an unknown nurse.

29. On December 9, 2021 Plaintiff received his medications at 6:40 p.m. from an unknown nurse.

30. On December 10, 2021 Plaintiff suffered a seizure reported it to nurse at 1:07 a.m. of December 11, 2021 when medicatations were received. Nurse took no action. Nurse unknown.

31. On December 11, Plaintiff received his medications at 10:40 p.m. from an unknown nurse.

32. On December 12, 2021 Plaintiff suffered a seizure, reported it to nurse at 8:30 p.m. when medications were received. Nurse took no action. Nurse unknown.

33. On December 13, 2021 Plaintiff received his medications at 10:41 p.m. Nurse unknown.

34. On December 14, 2021 Plaintiff received his medications at 10:25 p.m. nurse unknown.

35. On December 15, 2021 Plaintiff had seizure, doesn't remember what time medications were received, reported seizure to nurse; nurse took no action.

36. On December 17, 2021 Plaintiff received his medications at 2:00 a.m. of December 18, 2021, nurse unknown.

37. On December 18, 2021 Plaintiff received his medications at 6:35 p.m. nurse unknown.

38. On December 20, 2021 Plaintiff received his medications at 1:23 a.m.
    of December 21, 2021, nurse unknown.
39. On December 21, 2021 Plaintiff received his medications at 7:00 p.m.
    did not receive any seizure medications, only partial  prescriptions
    of Clondine and Gabpantin, nurse unknown.
40. On December 22, 2021 Plaintiff received his medications at 9:10 p.m.
    only received partial prescriptions of Clondine, Keppra, Cymbltia.
41. On December 23, 2021 Plaintiff received his medications at 10:10 p.m.
    only received partial prescriptions of Clondine, Keppra, Cymbltia. Nurse
    unknown.
42. On December 24, 2021 Plaintiff suffered a seizure, reported it to nurse
    when he received his medications at 10:27 p.m., nurse took no action,
    nurse unknown.
43. On December 25, 2021 Plaintiff received his medications at 10:50 p.m.
    did not receive Clonidine prescription. Nurse unknown.
44. On December 26, 2021 Plaintiff received his medications at 10:45 p.m.
    nurse unknown.
45. On December 27, 2021 Plaintiff received his medications 1:11 a.m. of
    December 28, 2021 nurse unknown.
46. On December 28, 2021 Plaintiff received his medications at 9:40 p.m.
    nurse unknown.
47. On December 29, 2021 Plaintiff suffered a seizure, reported it to nurse
    when he received his medications at 7:19 p.m.. Nurse took no action,
    nurse unknown.
48. On December 30, 2021 Plaintiff received his medications at 7:10 p.m.
    nurse unknown.
49. On December 31, 2021 Plaintiff received his medications at 10:10 p.m.
    nurse unknown.
50. On January 2, 2022 Plaintiff did not receive his medications. Nurse unknown.
51. On January 4, 2021 Plaintiff wrote to Defendant Jennifer Meeker about
    having seizures, and not receiving his medications.
52. On January 25, 2021 Plaintiff had sick call visit with Defendant Nurse
    Practioner O. Gomez, where he spoke with him about having seizures, and
    not receiving his seizure medications as prescribed, either at inconsistent
    times, or in part, or not at all. Making him susceptible to seizures.

53. On Febuary 8, 2022 Plaintiff wrote to Warden Tiffanie Clark about not not receiving his seizure medications, and suffering seizures.

54. On February 10, 2022 Plaintiff's aunt Deloris Knox placed a call to Illinois River Correctional Center, and spoke with an unknown person about Plaintiff's seizures, and him not receiving his medications.

55. On February 20, 2022 Plaintiff spoke with Mental Health counsler P. Lloyd about his seizure medications, and suffering seizures. Lloyd told Plaintiff that she would look into if seizure medications would be raised, and him having seizures.

56. On February 21, 2022 Plaintiff wrote to Defendant Teri Hicok about why she didn't show up for appointment on February 17, 2022.

57. On February 24, 2022 Plaintiff spoke with Defendant Teri Hicok at his cell, defendant that visit was a follow up.

58. On May 4, 2022 Plaintiff wrote to defendant Assistant Warden Tracy Bordner asking did he receive his first letter, and that he needed his help.

59. On May 31, 2022 defendant unknown Nurse told Plaintiff that his sezuire medication Keppra had expired.

60. On June 9, 2022 Plaintiff went to sick call for injured wrist, and was told by defendant unknown nurse that he had to attend sick call line 2 additional times, before being able to see Nurse Practioner for treatment.

61. On July 14, 2022 Plaintiff wrote to Defendant Jennifer Meeker about Defendant Teri Hicok missing an appointment, and not receiving x-rays on injured wrist.

62. On July 18, 2022 Plaintiff had x-ray of wrist.

63. On July 19 2022 Plaintiff was issued a wrist brace.

64. On July 29, Plaintiff was seen by Dr. Ottney about his wrist, and was scheduled to see a specialist

65. On October 7, 2022 Defendant Teri Hicok raised the dosage of his prescription for Keppra.

66. On July 14, 2023 nurse brought my meds at 10:30pm, but forgot one of my seizure meds Keppra and other meds Clonidine, Cymbalta. Received my morning meds on GRIEVANCES July 15, 2023 at 2pm.

67. Grievance 21-2923 was filed on November 10, 2021 for failure to administer medications at proper times, and not supplying correct dosages.

68. Grievance 21-293 was denied by counsler Boughan on December 13, 2021; then denied by grievance officer Lohnes, and defendant Warden Tiffine

Clark on April 20, 2022; and denied by the Administrative Review Board
on May, 25, 2022.

69. Grievance 22-0523 was filed on February 6, 2022, and deemed an emergency
grievance by defendant Warden Clark on February 15, 2022, for Defendants
O. Gomez, and Jennifer Meeker failure to raise Plaintiffs seizure medications
until frequent seizures were under control.

70. Grievance 22-0523 was denied by counselr Boughan on April 6, 2022; then
denied by grievance officer Lohnes, and defendant Warden Tiffine Clark
on August 1, 2022; and denied by the Administrative Review Board on September
9, 2022.

71. Grievance 22-1026 was filed on March 4, 2022, for Defendants O. Gomez,
and Teri Hicok failure to raise Plaintiffs seizure medications to get
his seizures under control.

72. Grievance 22-1026 was denied by counsler Boughan June 22, 2022; then
by the Grievance Officer Lohnes, and Defendant Warden Tiffine Clark on
October 12, 2022; and denied by the Administrative Review Board on November
3, 2022.

73. Grievance 22-1630 was filed June 16, 2022, and deemed an emergency grievance
by defendant Warden Tiffine Clark on June 21, 2022, for failure to supply
Plaintiff with his seizure medications consistently, and his wrist was
injured during a seizure on June 4, 2022.

74. Grievane 22-1630 was denied by the Grievance Officer Huffer, and defendant
Warden Tiffine Clark on October 5, 2022; and the Administrative Review
Board on November 3, 2022.

75. Grievance 22-1959 was filed on July 21, 2022, and deemed an emergency
by Defendant Tiffine Clark on August 8, 2022, for failure to supply Plaintiff
with seizure medications consistently causing him to suffer a seizure,
and injure his wrist.

76. Grievance 22-1959 was denied by the grievance officer Huffer, and defendant
Warden Tiffine Clark on August 18, 2022, and the Administrative Review
Board on September 21, 2022.

77. Grievance 23-4392 was filed on May 2, 2023, and deemed emergency grievance
by CAO on May 3, 2023, for Defendant Dr. Tate removing Plaintiff from

Dr. Ottney's referal to a specialist to examaine his wrist for damage, and Plaintiff on non-medical treatment, insufficent pain treatment.

78. Grievance 23-4392 was denied by the grievance officer Dennis, and CAO on May 15, 2023.

IV. Statement of Claim:

Claim 1. Defendants Illinois River Nursing Staff (names unknown) violated Plaintiff's 8th and 14th Amendment Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-94e: 42 US.C.S. §12101 et. seq.

1) Defendants, Illinois River C.C. Nursing Staff (names unknown) as employees of Wexford were dilerately indifferent to Plaintiff's serious medical needs.

2) Defendants, Illinois River C.C. nursing staff owed Plaintiff a duty or reasonable care in providing medical care by administering prescription medication, in conjunction with doctor's orders.

3) Defendants breached that duty by failing to deliver Plaintiff's prescribed medications on the dates listed in the introduction, in a manner consistent with doctor's orders. Defendant's were aware of the effects of Plaintiff not recieving his medications as prescribed, including seizures, memory loss, neurological damage, and physical harm.

4) The delivery of medications at inconsistant times proximetely caused an embalance in seizure control, and caused Plaintiff to suffer seizures on November 19, 2021; December 24, 2021; June 4, 2022; July 12, 2022, See affidavit of Plaintiff Vandaire Knox.

5) The delivery of medications at inconsistant times proximetly caused an embalance in seizure control, and caused Plaintiff to suffer a seizure on June 4, 2022 which proximetly caused Plaintiff to fall from his elevated bunk bed, and injuring his wrist.

Claim 2. Defendants, Illinois River C.C. Nursing Staff (names unknown) violated Plaintiff's 8th and 14th Amendment Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-94e: 42 U.S.C.S. §12101 et. seq.

6) Defendants, Illinois River Nursing Staff (names unknown) as employees of Wexford were dilberately indifferent to Plaintiff's serious medical needs.

7) Defendants, Illinois River C.C. Nursing Staff failed to order refills of Plaintiff's percriptions in a timely manner, occuring multiple times that Plaintiff was forced to go without prescribed medications on the dates listed in  the introduction.

8) The failure to promtly order refills of prescription seizure medications, resulting in Plaintiff not recieving necessary medications on the listed dates, promimtly caused a medical embalance resulting in Plaintiff suffering multiple seizures.

9) Defendants were aware of their responsibility to afford Plaintiff medical care at an acceptable level. Where Defendants as employees of Wexford are encluded parties to Don Lippert, et al., v. John Baldwin, et al, No. 10-cv-4603, joined in Joint Motion for Preliminary Approval of Class Action Settlement, and approved Consent Decree attached.

10) The Joint Motion for Preliminary Approval of Class Action Settlement, states in relevant part: Pursuant to Federal Rule of Civil Procedure 23 (e)(1), Plaintiffs and Defendants by their attorney, (collectively, the "Parties"), hereby request that the Court (i) preliminarily approve the Consent Decree attached hereto as Exhibit 1 as a fair, reasonable and adequate settlement of the class claims in this case; (ii) direct notice of the form attached hereto as Exhibit 2, and (iii) set a date for a fairness hearing on the proposed settlement. pg. 1

Principal features of the preposed Decree: 16. <u>The reforms contemplated by the Decree reflect the fact that the proposed Decree was negotiated against the backdrop of the two Court-Appointed Expert reports and substantial discovery.</u>

18. The Decree also addresses each of the areas identified by the First and Second Court-Appointed Experts and complained of in Plaintiffs Third and Forth Amendment Complaints - leadership and <u>staffing</u>, including physician qualifications; clinic space and sanitation; reception processing; intra-system transfer; medical records; nursing sick call; <u>chronic disease management</u>; <u>medication administration</u>; unscheduled (urgent/emergent) services; scheduled offsite services; infirmaries; infection control; the dental program; mortality reviews; and continuous quality improvement. *** The Decree <u>mandates</u> both certain specific as well as general changes in each of these areas, which will be further addressed by the Implementation Plan. pgs.6-7

The Consent Decree states in relevant part: pg. 5, II. Health Care General Provisions

A. General Statement. <u>Defendants shall implement sufficient measures, consistent with the needs of Class Members, to provide adequate medical</u>

<u>and dental care to those incarcerated in the Illinois Department of Corrections
with serious medical or dental needs.</u> Defendants shall ensure the availability
of necessary services, supports and other resources to meet these needs.

    B. General Requirements.

5. Continuity or care and medication from the community is also important
in ensuring adequate health care.

6. IDOC agrees to implement changes in the following areas:

c. Medication administration records-both for <u>directly administered medications</u>
and KOP.

f. Chronic disease care: diabetes, Chronic Obstructive Pulmonary Disease
("COPD"), HCV, HIV/AIDS, hypertension, hyperlipidemia.

11) Defendants (unknown nurses) were aware of the amounts of prescribed medica-
tions available to Plaintiff, as each packaging containing the medications
are visibly marked and numbered, and color indications when refills are
to be ordered. Defendants are aware of how many doses Plaintiff takes
each day, can determine when the medication will run out, and the
estimated time it will take for the pharmacy to deliver the refilled
order.

12) Defendants (unknown nurses) failure to order refills of Plaintiffs medications
in a timely manner, allowing the supply of medications to run out were
a direct cause of an embalance in seizure control, causing Plaintiff
to suffer multiple seizures (See dates listed in 4)), resulting in
neurological damage, and bodily injury to Plaintiff's wrist (See 5))
that that occured when Plaintiff fell from his elevated bunk bed to the floor.


Claim 3. Defendant Jenniffer Meeker, Illinois River Correctional Center,
Health Care Administrator, violated Plaintiff's 8th and 14th Amendment
Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-
94e: 42 U.S.C.S. §12101 et. seq.

13) Defendant Meeker as an employee of Illinois Department of Corrections
was deliberately indifferent to Plaintiffs serious medical needs.

14) Defendant Meeker being aware that Plaintiff was not receiving his prescribed
seizure medications, and suffering seizures due to not receiving those

medications failed to intervene and ensure that Plaintiff's siezure medications were timely refilled, and administered by the nursing staff directly under her charge.

15) Defendant Meeker was made aware of Plaintiff's serious medical needs whenPlaintiff sent a request to Defendant Meeker (See Ex.A,F,and introduction) alerting her to his serious medical needs.

16) Plaintiff suffered multiple seizures resulting in neurological damage in the form of memory loss, and thought processing; Plaintiff also suffered an injury to his wrist on June 3, 2022 during a seizure when he fell from his elevated bunk bed to the floor. (See 5))

Claim 4. Defendant O. Gomez, Nurse Practicner, employed by Wexford Health Sources Inc., violated Plaintiff's 8th and 14th Amendment Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-94e: 42 U.S.C.S. §12101 et. seq.

17) Defendant O. Gomez as an employee of Wexford Health Sources Inc. was deliberately indifferent to Plaintiffs serious medical needs.

18) Defendant O. Gomez being aware that Plaintiff was not receiving his seizure medications as prescribed, and suffering seizures due to not receiving those medication, failed to intervene and ensure that Plaintiff's seizure medications were timely refilled, and administered by the by the nursing staff under his charge.

19) Defendant O. Gomez after visiting Plaintiff on sick call meeting, told Plaintiff that he would raise his seizure medication to bring his seizures under control.

20) Defendant O. Gomez never raised the dosage of Plaintiffs medications, and Plaintiff's seizures continued to occur as a direct result of this failure.

21) Defendant O. Gomez was aware of his responsibility to afford Plaintiff medical care at an acceptable level, Where Defendant as employee of Wexford Health Sources Inc. are included parties to Don Lippert, et al., v. John Baldwin, et al., No. 10-cv-4603, joined in Joint Motion for Preliminary Approval of Class Action Settlement, and approved Consent Decree attached. (See Ex. Q, and 10))

22) Plaintiff suffered multiple seizures resulting in neurological damage
in the form of memory loss, and thought processing; Plaintiff also suffered
an injury to his wrist on June 3, 2022 during a seizure when he fell
from his elevated bunk bed to the floor, as a direct result of Defendants
deliberate indifference to Plaintiff's serious medical needs. (See 5))

Claim 5. Defendant T. Hicok as an enployee of Wexford Health Sources Inc.,
violated Plaintiff's 8th and 14th Amendment Rights, and the Americans
with Disabilities Act, 29 U.S.C. § 794-94e: 42 U.S.C.S. §12101 et.seq.

23) Defendant T. Hicok as an enployee of Wexford Health Sources Inc. was
deliberately indifferent to Plaintiffs serious medical needs.

24) Defendant T. Hicok being aware that Plaintiff was not receiving his seizure
medications as prescribed, and suffering seizures due to not receiving
those medications, failed to intervine and ensure that Plaintiff's seizure
medications were timely refilled, and administered by the nursing staff
under her charge.

25) Plaintiff sent a letter to Defendant T. Hicok on February 21, 2022 asking
why appointment to see her was canceled, and raising the issue of not
receiving his seizure medications at proper times, and the seizures he
has been suffering. (See Ex. E) Defendant T. Hicok came to the Plaintiff's
cell to see him, and Plaintiff reiterated his complaints about his medication
refill, and administration not being properly done, and that he was suffering
seizures as a result. (February 24, 2022 see introduction); on October
7, 2022, Defendant T. Hicok raised the dosage of one of Plaintiff's seizure
medications (Keppra). Plaintiff continued to receive his seizure medications
at inordinate hours, and failures to order refills after October 7, 2022.

26) Defendant T. Hicok was aware of his responsibility to afford Plaintiff
medical care at an acceptable level. Where Defendant as employee of Wexford
Health Sources Inc. are included parties to Don Lippert, et al., v. John
Baldwin, et al., No. 10-cv-4603, joined in Joint Motion for Preliminary
Approval of Class Action Settlement, and approved Consent Decree Attached.
(See Ex. Q , and 10))

27) Plaintiff suffered multiple seizures resulting in neurological damage
in the form of memory lose, and thought processing; Plaintiff also suffered

an injury to his wrist on June 3, 2022 during a seizure when he fell
from his elevated bunk bed to the floor, as a direct result of Defendant's
deliberate indifference to Plaintiff's serious medical needs. (See 5))

Claim 6. Defendant, Dr. Tate as an employee of Wexford Health Sources Inc.
violated Plaintiff's 8th and 14th Amendment Rights, and the Americans
with Disabilities Act, 29 U.S.C. § 794-94e: 42 U.S.C.S. §12101 et.seq.

28) Defendant Dr. Tate as an employee of Wexford Health Sources Inc. was
deliberately indifferent to Plaintiff's serious medical needs.

29) Defendant Dr. Tate being aware that Plaintiff is suffering from an injury
to his wrist as a result of a fall from his elevated bunk bed during
a seizure, intervined with Dr. Ottney's scheduling of Plaintiff's examination
with a specialist, of the injury to his wrist, by canceling the scheduled
examination, and diagnosing Plaintiff with carpal tunnel syndrome, with
the knowlwdege that Plaintiff suffered the injury to his wrist from
a fall, and in opposition to the findings of Dr. Ottney who scheduled
Plaintiff to to examined by a specialist.

30) Plaintiff sent request slips to Dr. Tate on Febuary 9, 2023 alerting
her that he was suffering greater pain from his wrist injury, and requesting
that his appointment to see the specialist be moved up. The request was
responded to by 3 individuals, none of which was Dr. Tate. (See Ex. R )

31) Defendant Dr. Tate was aware of her responsibility to afford Plaintiff
medical care at an acceptable level. Where Defendant as an employee of
Wexford Health Sources Inc. are included parties to Don Lippert, et al., v.
John Baldwin, et al., No. 10-cv-4603, joined in Joint Motion for Preliminary
Approval of Class Action Settelement, and approved Consent Decree Attached.
(See Ex. Q, and 10))

32) Planitiff is suffering from continuous pain in his wrist, due to Dr.
Tate's deliberate indifference to Plaintiff's serious medical needs.

Claim 7. Defendant, Warden Tiffanie Clark, former Acting Warden at Illinois
River Correctional Center, violated Plaintiff's 8th and 14th Amendment
Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-
94e: 42 U.S.C.S. §12101 et.seq.

33) Defendant, Warden Tiffanie Clark as an employee of Illinois Department
of Corrections was deliberately indifferent to Plaintiff's serious medical
needs.

34) Defendant Warden Clark being aware that Plaintiff was not receiving his prescribed seizure medications, and suffering seizures due to not receiving those medications failed to intervine and ensure that Plaintiff's seizure medications were timely refilled, and administered by the nursing staff directly under her charge.

35) Defendant Warden Clark was made aware of Plaintiff's serious medical needs when Plaintiff sent a letter to Defendant Warden Clark (See Ex.C,B,H) and introduction) alerting her to his serios medical needs.

36) Plaintiff suffered multiple seizures resulting in neurological damage in the form of memory loss, and thought processing; Plaintiff also suffered an injury to his wrist on June 3, 2022 during a seizure when he fell from his elevated bunk bed to the floor. (See 5))

37) Defendant Warden Clark was aware of her responsibility to afford Plaintiff medical care at an acceptable level, where defendant as an employee of Illinois Department of Corrections are included parties to Don Lippert, et al., v. John Baldwin, et al., No. 10-cv-4603, joined in Joint Motion for Preliminary Approval of Class Action Settlement, and approved Consent Decree attached. (See Ex.Q, and 10))

Claim 8. Defendant, Assistant Warden Tracy Bordner, former Assistant Warden at Illinois River Correctional Center, violated Plaintiff's 8th and 14th Amendment Rights, and the Americans with Disabilities Act, 29 U.S.C. § 794-94e: 42 U.S.C.S. §12101 et.seq.

38) Defendant, Assistant Warden Tracy Bordner as an employee of Illinois Department of Corrections was deliberately indifferent to Plaintiff's serious medical needs.

39) Defendant Assistant Warden Bordner being aware that Plaintiff was not receiving his prescribed seizure medications, and suffering seizures due to not receiving those medications failed to intervine and ensure that Plaintiff's seizure medications were timely refilled, and administered by the nursing staff directly under his charge.

40) Defendant Assistant Warden Bordner was made aware of Plaintiff's serious medical needs when Plaintiff sent a letter to Defendant Assistant Warden Bordner (See Ex.D, and introduction) alerting him to Plaintiff's serious

medical needs.

41) Plaintiff suffered multiple seizures resulting in neurological damage
in the form of memory loss, and thought processing, Plaintiff also suffered
an injury to his wrist on June 3, 2022 during a seizure when he fell
from his elevated bunk bed to the floor. (See 5))

42) Defendant Assistant Warden Bordner was aware of his responsibility to
afford Plaintiff medical care at an acceptable level, where defendant
as an employee of Illinois Department of Corrections are included parties
to Don Lippert, et al., v. John Baldwin, et al., No. 10-cv-4603, joined
in Joint Motion for Preliminary Approval of Class Action Settlement,
and approved Consent Decree attached. (See Ex. $Q$, and 10))

<u>Relief Requested</u>

Wherefore, Plaintiff requests that the court grant
the following relief:

**A.**

1.) Issue an Emergency Injunction ordering Illinois River to stop
undermining plaintiff health care and safety under the (ADA)
Disability Accomodation that's been afforded to him in "every"
facility plaintiff has been in by continuing to honor his low bunk
and low gallery permit by the M.D.. Defendants know he has bad
knees where one swells causing plaintiff serious pain. Even the
specialist that plaintiff has had seizures going up and down stairs
in other facilities he has been in before coming to Illinois River.
That's why plaintiff has always had a low bunk and gallery permit in
every facility he's been in. (Attached is M.D. Kurt Osmundson order
stating plaintiff has an indefinite low bunk and gallery permit.)

2.) Immediately transfer plaintiff to another facility with a better
health care system, such as Danville; Sheridan; Stateville; Pontiac; &
Centralia because plaintiff is in fear for his health and mental
state. Plaintiff is (47) years old now, and every seizure has been
because of defandant's "deliberate indifference" he suffer memory
loss, neurological damages, and physical harm. Defendants has placed
Individual in Custody in the cell with inmates who has fought their
cellmate and went to segregation for it, even though plaintiff has
never been to segregation for fighting. One strike to plaintiff's
head could place him in a coma or literally kill him.

**B.**

1.) Once transfered, plaintiff is to be sent out to see a specialist
about his injured wrist and why his fingers continuously goes numb.

2.) Award $50,000 jointly for deliberate indifference for the pain and
suffering from his numerous seizures and injury to his wrist and
fingers caused by defendants.

3.) Award $50,000 for Compensatory and Punitive damages for each

(Cont'd)                                                                      2.

defendants in their in their official and individual capacity.

C.

    Grant such other relief as it may appear that plaintiff is entitled.

11),Because the plaintiff is pro se, there may be other forms of relief
he is entitled to yet, because of his ability to identify and or
articulate such claims/ relief, the Court's guidance is requested
specially if the court doesn't appoint plaintiff counsel.

## VI. Jury Trial Demanded

    By signing this Plaintiff, I certify that the facts stated in this
plaintiff are true and correct to the best of my knowledge, information,
and belief. I understand that if this certification is not correct, I
may be subject to sanctions by the court.

Signed this 20 day of July        2023

[s] _____

Illinois River Correctional Center
1300 W. Locust, P.O. Box#999
Canton, Il. 61520

Subscribed and sworn to before me
this ____ day of July        , 2023
_____
Notary Public

HEATHER DANIELS
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
March 15, 2026

(25.)