E-FILED
Tuesday, 14 October, 2025  09:07:52 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VANDAIRE KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 23-1268-SEM-DJQ |
| | ) | |
| | ) | |
| JENNIFER MEAKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**SUE E. MYERSCOUGH, U. S. District Judge:**

This cause is before the Court on Defendants' motion for summary judgment. As explained more fully below, Defendants Oscar Gomez, Teri Hicok, and Lindsay Tate are entitled to summary judgment because Plaintiff Vandaire Knox has failed to identify a genuine issue of material fact that would preclude summary judgment in these Defendants' favor and because these Defendants have demonstrated that they are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim against them.

# I.
# MATERIAL FACTS

The Court notes that, although he filed a response to Defendants' motion for summary judgment, Plaintiff's response did not comply with Local Rule 7.1(D)(2)'s requirements, in that, Plaintiff did not respond to each numbered, material fact asserted by Defendants. Local Rule 7.1(D)(2)(b)(6) provides that "[a] failure to respond to any numbered fact [contained within a motion for summary judgment] will be deemed an admission of the fact." *Id.* Therefore, Plaintiff has admitted all of the relevant facts that show that Defendants are entitled to summary judgment, and the Court incorporates those facts herein. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010), *as revised* (July 19, 2010) (internal citations omitted) ("At summary judgment, the plaintiffs filed an opposition to the defendants' motion but did not bother to respond to their statement of material facts. The district court thus accepted the defendants' statement of material facts as true. We do as well.").[1]

---

[1] Despite Plaintiff's failure to respond properly to Defendants' motion for summary judgment, the Court is cognizant that "[s]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion." *Boyd v. Habeck*, 2013 WL 518966, * 1 (E.D. Wis. Feb. 12, 2013) (citing Fed. R. Civ. Pro.

With that in mind, the undisputed facts demonstrate the following. Plaintiff is an inmate with the Illinois Department of Corrections ("IDOC") who is currently housed at the IDOC's Danville Correctional Center. However, during all times relevant to his Complaint, Plaintiff was housed at the IDOC's Illinois River Correctional Center ("Illinois River").

Also during all relevant times, Defendant Oscar Gomez was an Advanced Practice Registered Nurse; Defendant Terri Hicok was Nurse Practitioner; and Defendant Lindsay Tate was a medical doctor. All three of these Defendants were appropriately licensed by the State of Illinois in their respective disciplines, and each worked at Illinois River and provided medical care and services to the IDOC inmates housed at Illinois River, including providing medical care and services to Plaintiff.

---

56(e) advisory committee note to 2010 amendments). Accordingly, the Court has reviewed the evidence submitted by Defendants in order to determine whether a genuine issue of material fact exists that would preclude summary judgment in their favor. The Court finds that no such disputed fact exists and that Defendants are entitled to judgment as a matter of law. *Abbot v. Gale*, 896 F.2d 323, 326 (8th Cir. 1990) (holding that where a defendant denies the allegations of the complaint and a plaintiff then fails "to respond with evidence in support of [her] claim," the court is justified in granting summary judgment).

Plaintiff arrived at Illinois River on November 1, 2021. Upon his arrival, Plaintiff was prescribed Keppra for his seizures. Plaintiff was also prescribed Neurontin (a/k/a Gabapentin) and Klonopin (a/k/a Clonazepam), which also serve as anti-seizure medications.

On January 7, 2022, Plaintiff reported to a nurse at Illinois River that he had experienced a seizure three days prior. Accordingly, on January 25, 2022, APRN Gomez examined Plaintiff in relation to Plaintiff's recent seizure activity. Because Plaintiff only complained of experiencing this one seizure since arriving at Illinois River and since being given his prescription medication, APRN Gomez ordered that Plaintiff's seizure medication (Keppra) and his Gabapentin be continued at the current dosage and frequency. This single interaction with APRN Gomez forms the basis for Plaintiff's Eighth Amendment claim against APRN Gomez.

On February 24, 2022, NP Hicok examined Plaintiff at the Illinois River's chronic clinic in relation to Plaintiff's seizure condition. During this visit, Plaintiff reported to NP Hicok that he had not experienced any new seizures since January 25, 2022. As a result, NP Hicok continued Plaintiff's seizure medications for six

months, and NP Hicok noted that a referral to neurology could be made if Plaintiff continued to suffer future break-through seizures.

On June 3, 2022, Plaintiff reported to a nurse that he had experienced a seizure. That same day, based upon that report, APRN Gomez, per a doctor's orders, increased Plaintiff's prescription for Keppra from 750mg to 1g to be taken twice daily.

On June 23, 2022, Plaintiff began complaining to the medical staff at Illinois River that he was and had been experiencing right wrist pain for weeks. On July 19, 2022, NP Hicok examined Plaintiff at the chronic clinic for an update on his seizure condition. During this examination, Plaintiff complained to NP Hicok that he was having difficulty receiving his medications on time, and therefore, he had missed some doses of his medication. In response, NP Hicok advised Plaintiff to seek immediately a nurse-sick-call appointment if his medications were not available to him. NP Hicok also prescribed a wrist splint for Plaintiff based upon his complaints of right wrist pain. Finally, NP Hicok increased Plaintiff's prescription for Gabapentin.

On August 24, 2022, Dr. Ottney examined Plaintiff based upon Plaintiff's right wrist arthralgia and based upon Plaintiff's new

complaint of an injury to his left wrist. Without taking an x-ray, Dr. Ottney entered a referral for Plaintiff to a neurology department based upon Plaintiff's left wrist condition.

On October 7, 2022, NP Hicok examined Plaintiff. During this visit, Plaintiff reported to NP Hick that, overall, he had been taking his medications consistently for the last three months and that he had not experienced any negative side-effects from the medication. When Plaintiff mentioned that, on occasion, he had experienced issues with receiving his medications in the med-line, NP Hicok advised Plaintiff to inform the medical providers immediately if he experienced any break-through seizures, and NP Hicok also provided orders that provided Plaintiff with a special pass and schedule to further ensure that he received his medications in a timely manner.

Dr. Tate first reviewed Plaintiff's medical chart on March 16, 2023. On that date, Dr. Tate documented that Plaintiff had not had any further sick call visits or complaints regarding his left wrist or hand. Accordingly, Dr. Tate cancelled Dr. Ottney's referral for Plaintiff to be examined by a neurology department because, in her

medical opinion, an examination by a neurologist was not medically necessary or indicated.

Dr. Tate saw Plaintiff in-person on April 4, 2023. On that date, Dr. Tate performed a physical examination of Plaintiff, and she heard Plaintiff's complaints of his right wrist pain. Based upon her examination and based upon Plaintiff's complaints, Dr. Tate prescribed medication, a brace, and conditioning for Plaintiff's right wrist. Plaintiff did not register any complaints to Dr. Tate regarding his left wrist during this visit.

On July 20, 2023, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against Defendants and others alleging that they had violated his Constitutional rights based upon the medical care that he had received and based upon the lack of medical care at Illinois River in 2021 and 2022. On March 29, 2024, the Court conducted a merit review of Plaintiff's Complaint, that is required by 28 U.S.C. § 1915A, and determined that Plaintiff's Complaint stated a claim against Defendants for acting with deliberate indifference towards his serious medical needs in violation of his Eighth Amendment rights.

Defendants have now moved for summary judgment on Plaintiff's claim against them. Further facts will be included *infra*, as necessary.

## II.
## STANDARS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has

the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986) (Brennan, J., dissenting) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III.
### DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS

Persons acting under the color of law violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs, serious mental health needs, or serious dental needs. *Arnett*

*v. Webster*, 658 F.3d 742, 750 (7ᵗʰ Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7ᵗʰ Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). The deliberate indifference standard requires a plaintiff to clear a high threshold in order to maintain a Constitutional claim. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7ᵗʰ Cir. 1999). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the . . . officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7ᵗʰ Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7ᵗʰ Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7ᵗʰ Cir. 2008) (same).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee*, 533 F.3d at 509 (quoting *Greeno,* 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the

criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37
(1994) ("We hold . . . that a prison official cannot be found liable
under the Eighth Amendment for denying an inmate humane
conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety; the official
must both be aware of facts from which the inference could be
drawn that a substantial risk of harm exists, and he must also
draw the inference.").

"Deliberate indifference is not medical malpractice; the
[Constitution] does not codify common law torts. And although
deliberate means more than negligent, it is something less than
purposeful. The point between these two poles lies where the official
knows of and disregards an excessive risk to inmate health or safety
or where the official is both aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and
he . . . draws the inference." *Duckworth*, 532 F.3d at 679 (internal
quotations and citations omitted). The Seventh Circuit has
cautioned, however, that a plaintiff "need not prove that the . . .
officials intended, hoped for, or desired the harm that transpired.
Nor does a [plaintiff] need to show that he was literally ignored.

That the [plaintiff] received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

In the instant case, Plaintiff has failed to designate any evidence with which to create a question of fact that would preclude summary judgment in Defendants' favor. In fact, other than providing a one-page affidavit[2] in support of his response, Plaintiff has cited to and has relied upon the evidence tendered by Defendants in support of their motion for summary judgment. Rather than demonstrate the existence of a question of fact

---

[2] Plaintiff's affidavit does not demonstrate the existence of a question of fact sufficient to preclude summary judgment in Defendants' favor. In his affidavit, Plaintiff makes the general statements that he complained to the medical staff at Illinois River about not receiving his seizure medication. However, Plaintiff does not state that he told APRN Gomez or NP Hicok that he was not receiving his prescription medication. As such, Plaintiff's affidavit is insufficient evidence to deny Defendants' otherwise proper motion for summary judgment. *E.g.*, *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

sufficient to preclude summary judgment, the evidence offered by Defendants shows that they are entitled to summary judgment.

### A.   APRN Gomez and NP Hicok are entitled to summary judgment.

Plaintiff argues that the Court should deny APRN Gomez and NP Hicok's motion for summary judgment because they had a duty to review his medical files in order to treat his seizure condition properly. Plaintiff contends that, had APRN Gomez and NP Hicok done so, they would have known that he was not regularly receiving his prescription medication for his seizures, and they could have intervened on his behalf. Because they did not review his medical files, neither APRN Gomez nor NP Hicok insured that he did not experience seizures, and as such, they acted with deliberate indifference towards his serious medical needs.

Plaintiff's argument is incorrect legally and factually. Factually, the undisputed facts show that, as part of their employment, APRN Gomez and NP Hicok were not responsible for receiving and handling the inmates' sick-call requests or grievances at Illinois River. Instead, APRN Gomez and NP Hicok's job duties were limited to seeing IDOC inmates at Illinois River to address the

13

inmates' medical needs. APRN Gomez and NP Hicok only examined inmates whom the prison staff and the nurses brought to them. Neither APRN Gomez nor NP Hicok were responsible for scheduling inmates' visits to medical, scheduling inmates' visits to outside providers (for example, for x-rays, physical therapy, or MRI's), ensuring their appearance at medical appointments, nor for sending prisoner medical requests to the United States Marshals.

More importantly for purposes of this lawsuit, neither APRN Gomez nor NP Hicok were required to distribute medication to the inmates at Illinois River as a part of their employment responsibilities. Rather, after they prescribed the medication, the nursing staff and the prison staff were responsible for obtaining and passing out the prescribed medication to the inmates at Illinois River, including to Plaintiff. As providers, after entering medical orders, APRN Gomez and NP Hicok were allowed to rely upon the nurses and prison staff to execute those orders properly and to provide prescribed medications as ordered. APRN Gomez and NP Hicok were not responsible for creating or maintaining the medication administration records for the inmates.

Therefore, Plaintiff is factually incorrect that APRN Gomez and NP Hicok acted with deliberate indifference towards his serious medical needs by not ensuring that he received his medication in a timely manner and as prescribed to him. Contrary to his assertion, APRN Gomez and NP Hicok did not have a duty or responsibility to ensure that he timely received his medication. As a result, APRN Gomez and NP Hicok cannot be found liable for acting with deliberate indifference towards Plaintiff when they factually did not owe a duty or have the responsibility to Plaintiff as he asserts that they did.

Of course, simply not owing a duty or having responsibility alone does not absolve APRN Gomez or NP Hicok of potential wrongdoing. If they were aware that Plaintiff was not timely and properly receiving his prescription medication and if they had the power to do something about it, APRN Gomez and NP Hicok could be held liable for acting with deliberate indifference.

But the basis for their knowledge, as argued by Plaintiff, is not legally supported. As noted *supra*, Plaintiff contends that APRN Gomez and NP Hicok should have independently reviewed his medical charts and files. Had they done so, Plaintiff asserts that

they would have learned that he was not timely receiving his prescription medication and that he was still having seizures.

However, the law does not impose any independent duty on APRN Gomez or NP Hicok to search out ways to provide medical treatment to Plaintiff. The Seventh Circuit has explained that

> "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This division of labor includes medical personnel who work in a prison setting. As one district court within the Seventh Circuit has recognized:

> Weightman was not in need of emergency care when he called out to Nurse Haseleu, so she was not required to abandon her duties to address Weightman's complaints. If the Constitution required nurses to interrupt whatever they were doing to respond to every inmate's call for assistance, it is unlikely that their duties would ever be completed in a timely, efficient manner. It is not clear from Weightman's amended complaint who is responsible for the initial delay he experienced on the day he injured his foot, but it was not [Nurse] Haseleu's responsibility.

*Weightman v. Obrien*, 2023 WL 2072079, * 3 (E.D. Wis. Feb. 17, 2023).

But even if APRN Gomez of NP Hicok should have reviewed the Plaintiff's medical files, a reasonable jury could not find in Plaintiff's favor and against APRN Gomez or NP Hicok because the undisputed evidence shows that APRN Gomez and HP Hicok were exercising their professional judgments in treating Plaintiff. This conclusion is supported by Plaintiff's medical records, APRN Gomez's affidavit, HP Hicok's affidavit, and their expert witness' opinion testimony.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, the medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In fact,

> medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will

be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698 (quotation marks and citations omitted). Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). The Constitution does not guarantee prisoners successful medical treatment. *Knight v. Wiseman*, 590 F.3d 458, 467 (7th Cir. 2009) ("The Eighth Amendment does not require prison officials to provide flawless treatment . . . ."). Instead prisoners are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Here, Plaintiff has failed to offer any evidence to counter APRN Gomez and NP Hicok's evidence that they exercised their professional judgments in their treatment decisions of Plaintiff's seizures, and this would include NP Hicok's counseling of Plaintiff as to what he should do if he did not receive his seizure medications at the med line. There simply is no evidence that APRN Gomez or NP Hicok's treatment of Plaintiff's seizures constituted a substantial departure from the relevant professional judgment, practice, or standards for treating seizures. *See Estate of Cole by Pardue v.*

18

*Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (holding that, when a prisoner alleges that he received some treatment for his medical condition, but it was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment."); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (holding that courts typically defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances). Therefore, APRN Gomez and NP Hicok are entitled to summary judgment on Plaintiff's claim that they acted with deliberate indifference towards his serious medical needs in violation of his Eighth Amendment rights.

**B.    Dr. Tate is entitled to summary judgment.**

Likewise, Dr. Tate is entitled to summary judgment on Plaintiff's claim that she acted with deliberate indifference towards his serious medical needs in violation of his Eighth Amendment rights. Plaintiff has not based his deliberate indifference claim against Dr. Tate on her treatment of his seizures or the medication

provided to him. Instead, Plaintiff bases his Eighth Amendment claim against Dr. Tate on the medical treatment that she provided to him for his injured wrist. Specifically, Plaintiff argues that the fact that Dr. Tate cancelled Dr. Ottney's referral for Plaintiff to be examined by a neurology department creates a question of fact sufficient to preclude summary judgment in Dr. Tate's favor.

The law is clear that "a difference of opinion between a physician and the patient does not give rise to a constitutional right, nor does it state a cause of action under § 1983." *Carter v. Ameji*, 2011 WL 3924159, * 8 (C.D. Ill. Sept. 7, 2011). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. Detella,* 95 F.3d 586, 592 (7th Cir. 1996).

The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing. *Estelle*, 429 U.S. at 104-106 (1976); *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985). The Eighth Amendment does not guarantee access to the latest technology or to a specific medical test. *Glenn v.*

*Barua*, 2007 WL 3194051, * 3 (3d Cir. 2007) (noting that "a decision not to use an x-ray or other diagnostic technique is "a classic example of a matter for medical judgment, and does not by itself amount to constitutionally deficient treatment.") (internal quotation omitted).

In other words, "[a] prisoner has the right to medical care; however, he does not have the right to determine the type and scope of the medical care he personally desires." *Carter*, 2011 WL 3924159, at * 8 (citing *Coppinger v. Townsend*, 398 F.3d 392, 394 (10th Cir. 1968)). "The Eighth Amendment does not require that prisoners receive unqualified access to healthcare. Rather, inmates are entitled only to adequate medical care." *Leyva v. Acevedo*, 2011 WL 1231349, * 10 (C.D. Ill. Mar. 28, 2011) (internal quotations omitted). A disagreement between medical providers regarding the best treatment options for an inmate alone cannot support a claim that one of the medical providers acted with deliberate indifference to a prisoner's serious medical needs by ignoring or changing the other medical provider's treatment plan. *Pyles*, 771 F.3d at 409 (noting that a "[d]isagreement . . . between two medical professionals, about the proper course of treatment generally is

insufficient, by itself, to establish an Eighth Amendment violation."); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (same).

In the instant case, Plaintiff has offered no evidence with which to create a question of fact sufficient to preclude summary judgment that Dr. Tate violated his Eighth Amendment rights by cancelling the referral that Dr. Ottney had made for Plaintiff. On the contrary, the undisputed evidence shows that, like APRN Gomez and NP Hicok, Dr. Tate exercised her professional judgment in treating Plaintiff's wrist, and that includes Dr. Tate's decision to cancel Plaintiff's referral to be seen by a neurology department.

**IT IS, THEREFORE, ORDERED:**

1.    **Defendants Oscar Gomez, Teri Hicok, and Lindsay Tate's motion for summary judgment [92] is GRANTED.**

2.    **Accordingly, the Clerk of the Court is directed to terminate Oscar Gomez, Teri Hicok, and Lindsay Tate as a party Defendants.**

3.    **The Court will enter judgment in Defendants Oscar Gomez, Teri Hicok, and Lindsay Tate's favor and against Plaintiff at the conclusion of this case.**

**4.    This case will proceed against Defendants Jennifer Meaker and Tracey Bordner on Plaintiff's claim that they acted with deliberate indifference towards his serious medical needs in violation of his Eighth Amendment rights.**

Entered this 14th day of October, 2025

                              s/ Sue E. Myerscough
                           SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE